UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

AMERICAN MEDICAL SECURITY GROUP, INC.,

    Plaintiff,

v.                                          Case No. 04-C-1140

INFUSION SPECIALTIES, INC., *et al.*,

    Defendants.

**MEMORANDUM AND ORDER**

    Plaintiff American Medical Security Group, Inc. (AMS), claims Infusion Specialties, Inc. (Infusion), and two individuals who worked for Infusion, Daniel Dietrich and Wendell Long, defrauded AMS out of more than $618,000. The alleged fraud consisted of false representations that an individual for whose dependents Infusion provided medical services was employed by Infusion and therefore eligible for insurance coverage under a group policy issued by AMS to Infusion. Alleging federal diversity jurisdiction under 28 U.S.C. § 1332, AMS filed suit in the Eastern District of Wisconsin asserting claims against Infusion, Dietrich, and Long for common law fraud and unjust enrichment and against Infusion alone for breach of contract and declaratory relief. Dietrich and Long, both citizens of Texas, have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction and, alternatively, for transfer of venue. For the reasons set forth below, the motions to dismiss will be granted.

# FACTS

AMS is a Wisconsin corporation with its principal place of business in Green Bay, Wisconsin. AMS provides health benefit plans to individuals, families and small businesses. (Compl. ¶ 4.) Infusion is a Texas corporation with its principal place of business in Houston, Texas. Infusion describes itself as a full service home health care company specializing in the care of pediatric patients and all patients with chronic disorders. Among the services it provides, Infusion distributes drugs and related pharmaceutical supplies to patients suffering from hemophilia. (*Id.* ¶ 5.) When it was first incorporated, Dietrich served as president of Infusion and was one of two shareholders. In May, 2002, Infusion was sold to Option Care Enterprises, Inc. (Option Care), a Delaware corporation, and Dietrich continued as an employee of Infusion/Option Care until approximately February of 2004. (Dietrich Aff. ¶ 2.) Long, on the other hand, is variously described as Chief of Operations, head of Human Resources, and an independent contractor performing general office work. He states he became an independent contractor for Option Care in April 2002, and then became Option Care's employee in April of 2003, until his employment ended as a result of a consolidation in June of 2004. (*Id.* ¶¶ 6-7; Long Aff. ¶ 2.) Long has never been a shareholder, officer or director of Infusion. (Long Aff. ¶ 3.)

In or about July 1997, AMS began providing health insurance coverage for Infusion employees. (Compl. ¶ 10.) Initially, Infusion's employee health insurance policy with AMS covered only Dietrich and Infusion's vice-president. (*Id.* ¶ 17.) In July of 2000, Infusion attempted to add an individual (referred to as "Individual #1" in the complaint) to the policy. (Compl. ¶¶ 1, 18.) Infusion sent AMS an enrollment application to add Individual #1 to Infusion's policy (*Id.* ¶ 19, Ex. E), but AMS denied coverage because the form was incomplete. (*Id.* ¶ 20.) AMS received a second enrollment application for Individual #1 from Infusion the following year in July

of 2001. An enclosure letter signed by defendant Long accompanied the form. (*Id.* ¶ 21.) This application was also incomplete, however, and AMS requested and was provided additional employment information. On the basis of the additional information provided, AMS approved coverage for Individual #1 in August of 2001. (*Id.* ¶¶ 22, 23 Ex. G.)

Shortly thereafter, AMS began receiving substantial claims from Infusion for reimbursement for health care services Infusion had purportedly provided to two of Individual #1's children. (*Id.* ¶ 24.) An AMS representative telephoned Infusion in an effort to discuss the claims with Individual #1, but was told by the Infusion receptionist that neither she nor the other employee in the office that day knew who Individual #1 was or what she did. A short time later, AMS received a call from someone at Infusion who stated that Individual #1 did work for Infusion and was a Reimbursement Consultant responsible for insurance billing. When a later attempt to contact Individual #1 also failed, AMS requested documentation from Infusion to verify she was an employee. In response to AMS's request, Infusion completed a form entitled "Employee Verification for [Individual #1]," which represented that Individual #1 had been hired on October 16, 1997, held the position of Marketing Representative, worked from home and was a salaried employee. Attached to the form was a document entitled "Schedule 2.1 Duties: Marketing Representative," which purported to list Individual #1's responsibilities as an employee of Infusion. (*Id.* ¶¶ 25-26, Ex. I.) Infusion also provided AMS with purported payroll records and a W-2 for Individual #1, and defendant Dietrich confirmed over several telephone conversations that Individual #1 was an employee of Infusion. (*Id.* ¶ 26.)

In the meantime, Infusion continued to submit claims for reimbursement for health care services and expensive hemophilia drugs it purportedly provided to Individual #1's dependents. From October 2001 to April 2003, Infusion submitted claims to AMS for reimbursement for

3

services provided to Individual #1's children totaling in excess of two million dollars. (*Id*. ¶ 28.) Between May 1, 2002 and December 18, 2002, AMS paid Infusion over $618,000 on those claims. (*Id*. ¶ 29, Ex. L.) AMS alleges that each and every claim submitted by Infusion represented that Individual #1 was an employee of Infusion and that AMS relied upon those representations in paying the claims. AMS alleges that, in fact, the representations were false and fraudulent in that Individual #1 was not an active employee of Infusion at the time she was added to the policy. (*Id*. ¶¶ 29-31.) In addition, AMS alleges that the claims submitted by Infusion were materially false in that Infusion grossly over-billed for the services provided, routinely charged for more units than were provided and charged more per unit than was proper. (*Id*. ¶ 37.) Finally, AMS alleges that Infusion also attempted to fraudulently enroll another individual under the group policy issued by AMS, but that the claims Infusion submitted for reimbursement for services purportedly provided by Infusion for that individual's child were denied. (*Id*. ¶¶ 33-34.)

As noted above, AMS asserts two claims against Dietrich and Long. (*Id*. ¶¶ 41-46, 51-55.) The first claim (also asserted against Infusion) is for common law fraud: AMS alleges that Dietrich, Long, and Infusion knowingly misrepresented the employment status of Individual #1 as well as another person in an attempt to obtain coverage for those individuals and reimbursement for services Infusion provided to them. (*Id*. ¶ 42.) The second claim against Dietrich and Long (and Infusion) is for unjust enrichment: AMS alleges that Dietrich and Long benefitted from their statements to AMS because by accepting and retaining AMS' payments to Infusion, they violated "fundamental principles of justice, equity and good conscience." (*Id*. ¶¶ 51-55.)

The record is sparse as to Dietrich's direct contact with Wisconsin. On March 13, 2002, Dietrich made a phone call to AMS in Wisconsin to check on the status of Individual #1's claims. (Gilderneck Aff., ¶ 3.) He also participated in nine other calls with AMS representatives in

4

Wisconsin, but whether the AMS representatives or Dietrich initiated the calls is unclear. Dietrich filled out and signed a form stating that Individual #1 received no employee discounts or fees. The form was sent to AMS in Wisconsin on November 6, 2001. (Compl. ¶ 27(a), Ex. H.) On April 15, 2003, Dietrich sent a letter to AMS in Wisconsin, in which he complained about AMS' failure to pay certain claims and threatened legal action. (Compl., Ex. H.) Dietrich states that during his employment with Infusion, he never solicited business in Wisconsin. (Dietrich Aff. ¶ 3.) Dietrich asserts that he has never been a resident of Wisconsin or set foot in this state. (*Id*. ¶ 1.) Dietrich also claims that he did not complete or submit the enrollment application form for Individual #1 or for any other person. (*Id*. ¶¶ 9, 12.)

Long's Wisconsin contacts appear even more limited. In addition to the letter enclosing Individual #1's enrollment form in July of 2001, Long sent a letter to Wisconsin dated March 25, 2003 apprising AMS of the fact that Individual #1 was leaving her employment with Infusion. (Pl.'s Ex. D.) Long also sent a letter terminating Infusion's contract with AMS to Wisconsin on April 22, 2003. (Pl.'s Ex. F.) Long states that he did not complete any enrollment application forms, did not pay premiums to AMS, and did not submit any claims to AMS. (Long Aff. ¶¶ 8, 10, 13.)

**ANALYSIS**

In Wisconsin, courts use a two-step analysis to determine whether personal jurisdiction over a defendant exists. First, the plaintiff must demonstrate personal jurisdiction over the defendant under Wisconsin's long-arm statute, Wis. Stat. § 801.05. *Steel Warehouse of Wis., Inc. v. Leach*, 154 F.3d 712, 714 (7th Cir. 1998). The plaintiff is only required to make a prima facie showing of jurisdiction. *Logan Productions, Inc. v. Optibase, Inc.*, 103 F.3d 49, 52 (7th Cir. 1996). If this burden is satisfied, the court must consider whether exercising jurisdiction complies with the due

process clause of the Constitution. *Id*. In determining whether jurisdiction exists over a non-resident defendant, the court can rely on the complaint and any affidavits that have been submitted. *Schimpf v. Gerald, Inc.* 2 F. Supp. 2d 1150, 1160 (E.D. Wis. 1998). All inferences drawn from the record must be in the plaintiff's favor. *PKWare, Inc. v. Meade*, 79 F. Supp. 2d 1007, 1011 (E.D. Wis. 2000).

AMS argues that personal jurisdiction over Dietrich and Long exists under Wis. Stat. § 801.05(3), which reads: "A court of this state having jurisdiction of the subject matter has jurisdiction over a person . . . [i]n any action claiming injury to person or property within or without this state arising out of an act or omission within this state by the defendant." Wis. Stat. § 801.05(3). AMS claims that Dietrich and Long's communications with AMS' office in Wisconsin amount to "act[s] or omission[s] within this state."

When determining whether personal jurisdiction exists under subsection (3), "the relevant conduct is behavior that would constitute an element of an alleged offense." *Nelson v. Bulso*, 149 F.3d 701, 703 (7th Cir. 1998). The elements of fraud are:

> 1) the defendant must have made a representation of fact to the plaintiff; 2) the representation of fact must be false; and 3) the plaintiff must have believed and relied on the misrepresentation to his detriment or damage . . . 4) the defendant must have made the misrepresentation with knowledge that it was false or recklessly without caring whether it was true or false; and 5) the defendant must have made the misrepresentation with intent to deceive and to induce the plaintiff to act on it to his detriment or damage.

*Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233, 239 (Wis. 2004). The elements of unjust enrichment are:

> (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value.

6

*S & M Rotogravure Service, Inc. v. Baer*, 252 N.W.2d 913, 915-916 (Wis. 1977). None of the actions alleged by AMS to support jurisdiction constitutes an element of unjust enrichment.

As to the claim of fraud, neither Long's March 25, 2003 letter nor his April 22, 2003 letter constitutes an element of that offense. Both letters were sent after December 18, 2002, the date that AMS last paid a claim by Individual #1. Thus, AMS could not have relied on either letter in paying Individual #1's claims. Long's July 26, 2001 letter, however, was part of the process of securing insurance coverage for Individual #1. While Long did not complete or sign the insurance application itself, he did represent that Individual #1 was an employee of Infusion:

> Please find attached the Texas Employee Enrollment form for [Individual #1], who will be employed by Infusion Specialties effective July 1, 2001. [Individual #1] is applying for coverage under Infusion Specialties Group Number 2100-008753. Please refer questions to the undersigned. Thank you in advance for your assistance.

(Compl. Ex. F.) On AMS' theory of this case–which is that Individual #1 was not, in fact, employed by Infusion Specialties at any time–this letter may amount to a false representation of a material fact. Thus, this action is one "arising out of" Long's July 26, 2001 letter.

This argument fails, however, because Long's July 26 letter was not an "act or omission . . . within [Wisconsin]," as required by subsection (3). While the record is not entirely clear, it appears that Long faxed the letter from Houston, Texas to Green Bay, Wisconsin. (Compl., Ex. F; Long Aff., ¶¶ 2, 7.) A letter sent from another state to Wisconsin is not an act within Wisconsin. *See Pavlic v. Woodrum*, 486 N.W.2d 533, 536 (Wis. Ct. App. 1992) ("Timothy's only actions were two letters mailed [from Florida] to Pavlic's Wisconsin address. These letters were not acts or omissions in Wisconsin.") Accordingly, no personal jurisdiction over Long exists under subsection (3).

For similar reasons, no personal jurisdiction over Dietrich exists under subsection (3). Dietrich's April 15, 2003 letter, like Long's March 25 and April 22, 2003 letters, postdates AMS'

7

last payment on a claim by Individual #1. His November 6, 2001 letter merely states that Individual #1 received no employee discounts or fees; AMS does not contend that this statement was false. Dietrich's March 13, 2002 phone call may have implicitly asserted that Individual #1 was an employee of Infusion, and thus may have been a false representation of a material fact. A phone call placed from outside of Wisconsin, however, is not an act within Wisconsin. *See Cram v. Med. College of Wis.*, 927 F. Supp. 316, 320 (E. D. Wis. 1996) (holding that two phone calls to Wisconsin from Massachusetts were not "acts or omissions within [Wisconsin]"). Nor do phone calls that Dietrich received from Wisconsin constitute acts within Wisconsin.[1] *See Dietrich by Padway v. Wis. Patients Comp. Fund*, 485 N.W.2d 614, 618 (Wis. Ct. App. 1992) (holding that defendant's receipt of phone calls from Wisconsin was insufficient to satisfy subsection (3)). Accordingly, no personal jurisdiction over Dietrich exists under subsection (3).

AMS argues that *Pavlic* and *Cram* are distinguishable because the contacts at issue in those cases did not constitute elements of the alleged offenses. Both the *Pavlic* and *Cram* courts focused on whether the acts in question were "within [Wisconsin]." Neither court indicated that its analysis would have differed had the acts in question been elements of the alleged offenses. Indeed, the *Cram* court cited as authority for its holding *Tavoulareas v. Comnas*, 720 F.2d 192 (D.C. Cir. 1983), an action arising out of defamatory statements made in phone calls in which the United States Court of Appeals for the District of Columbia Circuit held that the phone calls, which were made to the District of Columbia from Massachusetts and New York, were not acts or omissions within the District of Columbia. *Id.* at 193-4.

---

[1] With the exception of the March 13, 2002 phone call, AMS does not indicate who initiated Dietrich's phone contacts with AMS. Because AMS bears the burden of establishing personal jurisdiction under Wis. Stat. § 801.05(3), the court will assume that AMS initiated the other calls.

8

AMS also argues that Dietrich's and Long's communications were actions in Wisconsin because reliance on those communications, the final element necessary to establish a fraud claim, occurred in Wisconsin. However, this argument confuses the locus of the "injury," Wis. Stat. § 801.05(3), which may be "within or without [Wisconsin]," *id.*, with the location of the "act or omission . . . by the defendant," *id.*, which must be "within," *id.*, Wisconsin. Wis. Stat. § 801.05(3) distinguishes between the act and the injury and contemplates that they may occur in different places, as they did here.

AMS contends that *State v. Advance Marketing Consultants*, Inc., 225 N.W.2d 887 (Wis. 1975), stands for the proposition that, for purposes of establishing personal jurisdiction, "[a]cts of a corporation may be imputed to individuals where control is shown." *Id.* at 891. But as the Wisconsin Court of Appeals explained in *Pavlic*,

> [*Advance Marketing*] do[es] not stand for the proposition that an officer of a corporation, who allegedly commits the personal tort of fraud or misrepresentation, is always subject to personal jurisdiction in Wisconsin. There must be some act or omission by that officer *in Wisconsin* to justify personal jurisdiction. In *Advance Marketing*, advertisements were circulated in Wisconsin by virtue of the officer's control; the officer came to Wisconsin to negotiate the contract; and as a result of that negotiation, the officer was a cosigner of the contract.

*Pavlic*, 486 N.W.2d at 536 (emphasis added). Here, whatever their positions in Infusion might have been,[2] neither Dietrich nor Long committed or performed any act in Wisconsin so as to subject himself to personal jurisdiction here.

Even if, as AMS argues, all of Infusion's acts are to be imputed to Dietrich and Long, the result would be the same, for Infusion performed no acts in Wisconsin either. The word "act" means "the doing of a thing; a deed." Merriam-Webster's Collegiate Dictionary 11 (10th ed. 1999). In order for jurisdiction to exist under § 801.05(3), the defendant must do something or perform a

---

[2] Dietrich was clearly an officer and a director of Infusion. Long's relationship to the company is substantially less clear.

9

deed in Wisconsin. Here, all of the "acts" of the defendants upon which AMS relies consist of communications to AMS in Wisconsin from Infusion or its employees in Texas. Although the communications were received in Wisconsin, the acts needed to make and transmit the various communications to AMS were all performed by the defendants, or at their direction, in Texas. As *Pavlic* and *Cram* make clear, a defendant who places a telephone call or sends a letter to Wisconsin from another state does not, by virtue of that conduct alone, act in Wisconsin. On this record, the court is unable to find that the defendants performed any acts within this state.

Next, AMS argues for personal jurisdiction over Dietrich and Long under Wis. Stat. § 801.05(4)(a), which states: "A court of this state having jurisdiction of the subject matter has jurisdiction over a person . . .[i]n any action claiming injury to person or property within this state arising out of an act or omission outside this state by the defendant, provided in addition that at the time of the injury, . . . [s]olicitation or service activities were carried on within this state by or on behalf of the defendant . . . ." Wis. Stat. § 801.05(4)(a). AMS asks this court to interpret the term "solicitation" as "petitioning" or "approaching with a request or plea," and argues that Dietrich and Long met the requirements of the statute by petitioning, requesting, or pleading for insurance coverage for Individual #1. (Pl.'s Resp. at 14.) Courts have, however, limited the term "solicitation" to communications made in anticipation of a financial benefit to the defendant. *See Federated Rural Elec. Ins. Corp. v. Inland Power and Light Co.*, 18 F.3d 389, 393 (7th Cir. 1994) ("According to Wisconsin law, before a solicitation triggers § 801.05(4)(a) it must be made by the defendant to the plaintiff, and the defendant must expect some financial benefit."); *Pavlic*, 486 N.W.2d at 535 (holding that ministerial duties, such as the mailing of stock certificates, are not solicitations because at the time of mailing, there is no anticipation of a direct or indirect financial benefit). Neither Dietrich's telephone conversations nor Long letters can be reasonably considered

10

solicitation or service activities within the meaning of § 801.05(4)(a). Thus, Dietrich and Long are not subject to personal jurisdiction under this subsection.

Lastly, AMS maintains that personal jurisdiction exists under Wis. Stat. § 801.05(5)(b), which reads: "A court of this state having jurisdiction of the subject matter has jurisdiction over a person . . .[i]n any action which . . . [a]rises out of . . . services actually performed for the defendant by the plaintiff within this state if such performance within this state was authorized or ratified by the defendant . . . ." Wis. Stat. § 801.05(5)(b). AMS argues that Dietrich and Long "authorized or ratified" the performance of services for Infusion by sending information to AMS while knowing that services would be provided, and cites *Daniel J. Hartwig Assoc., Inc. v. Kanner*, 913 F.2d 1213 (7th Cir. 1990) and *Zerbel v. H.L. Federman & Co., Inc.*, 179 N.W.2d 872 (Wis. 1970), in support of its contention that this establishes jurisdiction over Dietrich and Long.[3] In both cases, however, the defendant authorized the plaintiff to perform services in Wisconsin *for the defendant*. This action arises out of services performed for Infusion by AMS within this state. It does not arise out of services performed for Dietrich or Long. Thus, the question of whether Dietrich or Long "authorized or ratified" AMS' performance of services for Infusion is irrelevant.

## CONCLUSION

For the foregoing reasons, the court concludes that it does not have personal jurisdiction over Dietrich and Long under Wisconsin's long-arm statute. Because Wisconsin's long-arm statute does not reach these defendants, there is no reason to address the issue of due process. *Nelson v. Bulso*, 149 F.3d at 705.

**IT IS THEREFORE ORDERED** that Dietrich and Long's motions to dismiss for lack of

---

[3]Dietrich and Long contend that neither had the individual authority to authorize Infusion's claims and to submit them to AMS. (Dietrich Aff. ¶ 12; Long Aff. ¶¶ 12, 13.)

11

personal jurisdiction (Docket #23 and #36) are hereby **GRANTED** and the action is dismissed as to defendants Dietrich and Long without prejudice. Finding no just reason for delay, the clerk is directed to enter judgment accordingly. The remainder of the case shall set this matter for a Rule 16 scheduling conference forthwith.

Dated this   12th   day of August, 2005.

s/ William C. Griesbach
William C. Griesbach
United States District Judge